# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2020 JAN 28 A 10: 44

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **DETRAYLES RICH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION NO.: |
| v. | ) 1:20-CV-0069-SRW |
| | ) |
| **ASRC FEDERAL HOLDING COMPANY,** | ) |
| **LLC, ASRC PRIMUS SOLUTIONS, INC. AND** | ) |
| **PRIMUS SOLUTIONS, LLC,** | ) |
| **FORT RUCKER DIVISION** | ) |
| | ) **JURY DEMAND** |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

COMES NOW the Plaintiff, Detrayles Rich ("Rich"), by and through his attorney of record, and for his Complaint against the Defendants ASRC Federal Holding Company, LLC ("Primus") and Primus Solutions, LLC, states the following:

### I.   JURISDICTION

1. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 (Federal question) and 1343 (Civil Rights), and venue is appropriate under 28 U.S.C. §1391 (all parties are located within the Middle District of Alabama, and all the acts complained of took place in the Middle District of Alabama).

1

2. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, including the Civil Rights Act of 1991, 42 U.S.C. §2000(e) *et. seq.* and 42 U.S.C. § 1981.

3. The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the Civil Rights Act of 1991 codified as 42 U.S.C. §2000e *et seq.*

4. On June 17, 2019, the Plaintiff timely filed his charge of discrimination within 180 days of occurrence of the last discriminatory act. (See Charge of Discrimination attached hereto as Exhibit A).

5. On Friday, November 1, 2019, the EEOC issued a "Right to Sue" letter which was mailed on November 1, 2019 and later received by the Plaintiff on Monday, November 4, 2019 via United States Mail. (See "Right to Sue" letter and post marked envelope attached as Exhibit B).

6. The plaintiff timely filed this lawsuit within 90 days of his receipt of his "Right-to-Sue" letter from the EEOC.

7. There are no conditions precedent to the institution of this action under 42 U.S.C. §1981. All of the allegations of the Complaint occurred within four (4) years of the complaint. 28 U.S.C. § 1658(a); *See* Jones v. R.

R. Donnelley & Sons Co., 541 U.S. 369 (U.S. 2004); Baker v. Birmingham Board of Education, 531 F.3d 1336, 1339 (11th Cir. 2008)(where the 11th Circuit found the District Court erred in applying the two year 1983 statute of limitation, and held 42 U.S.C. §1981 has a four year statute of limitation pursuant to 28 U.S.C. §1658).

## II. PARTIES

8. Rich is over the age of nineteen (19), is a citizen of the United States, a resident of the Middle District of Alabama.

9. The Defendants, ASRC Federal Holding Company, LLC, ASRC Primus Solutions, Inc. and Primus Solutions, LLC, (collectively "Primus") are each corporations, which do business in the Middle District of Alabama.

10. At all times relevant to this suit, Primus was Rich's employer for the purposes of Title VII and is an entity subject to suit under Title VII.

11. Primus employed more than fifteen (15) employees for twenty (20) or more calendar weeks of the year preceding the Plaintiff's complaint.

## III. FACTUAL ALLEGATIONS

12. Rich is an African American.

13. Rich was employed by Primus at all times material to the complaint.

14. On or about **September 17, 2015**, Rich began his employment with Primus.

15. On or about **September 29, 2015,** Jason Batchelor, Caucasian, was hired to work for Primus.

16. While Rich was a part-time employee, he did work over 30 hours per week.

17. On or about **January 6, 2016**, Keith Faulk, Caucasian, was hired to work for Primus.

18. On or about **April 19, 2016**, Christopher Watson, Caucasian, was hired to work for Primus.

19. In or around **July, 2016**, Rich notified Primus management of his interest in getting the proper training to assist him in becomming a temp lead and later full-time lead at one of three base fields.

20. Throughout his employment, Rich was repeatedly told he would be given the paperwork to be issued a CAC card and receive proper training for temp-lead or lead person.

21. On or about **September 17, 2016,** after one year of employment, Rich was eligible for insurance.

22. To obtain insurance, Rich had to notify human resources to obtain the necessary paperwork to apply.

23. After one year of employment with Primus, Rich notified human resources that he wanted to apply for insurance.

24. At that time, Rich was told by Human Resources he was ineligible for insurance.

25. Rich explained to Human Resources that he, in fact, worked over 30 hours each week and was eligible for insurance; however, Human Resources refused to allow him to apply for insurance.

26. Rich then asked Human Resources for confirmation that he was ineligible for insurance so that his wife (who was a city employee and not required to pay for individual coverage) could add Rich to her insurance.

27. Since Rich was denied insurance by Primus, Rich's wife was required to pay $235.00 per month to cover Rich.

28. Rich continued to inquire about insurance over the next two years and he was repeated told he was ineligible.

29. During his employment, Rich applied for several lead positions.

30. In or around **October 2016**, Jason Batchelor received training and his CAC card.

31. In or around **November, 2016**, Jason Batchelor received a promotion for which Rich applied.

32. In or around **August, 2018**, Keith Faulk received training, a CAC card, and a promotion for which Rich applied.

33. Also around **August, 2018**, Christopher Watson received training, a CAC card, and a promotion for which Rich applied.

34. Primus was supposed to go by Seniority to determine who receives training, a CAC card, and then job selection.

35. Rich had more Seniority over Jason Batchelor, Keith Faulk, and Christopher Watson yet he never received training, a CAC card or a promotion.

36. In or around **October or November, 2018**, complained to his supervisor, Will Martin, and Safety Manager, Deitrick Kyles about racial discrimination due to the fact he had not received his CAC card, training or a promotion.

37. On or about **November 5, 2018**, Rich filed a grievance with Primus complaining of racial discrimination in the selection of Lead or Team Lead positions.

38. After Rich filed his grievance, Christopher Watson called Rich and told him he wanted to train Rich because Primus was concerned that Rich was going to file a lawsuit.

39. On or about **November 6, 2018**, a Lead Refueler position at Hanchey AHP 2nd shift was posted and Rich was the second person to apply on the list.

40. Also on or about **November 6, 2018**, a full time Driver/Refueler positon at Cairns 1st Shift was posted and Rich was the second person to apply on the list.

41. Also on or about **November 6, 2018**, a Lead Refueler position at Lowe AHP 1st Shift was posted and Rich was the second person to apply on the list

42. On or about **November 8, 2018,** Rich filed a second grievance regarding Primus refusal to allow Rich to apply for insurance of which he was eligible.

43. On or about **January 11, 2019**, a Lead Refueler position at Cairnes AHP 2nd shift was posted and Rich was the third person to apply on the list.

44. Rich was never promoted to any lead positions even though he was qualified for those positions.

45. On or about **January 21, 2019,** the Lead Refueler Cairns AHP 2nd shift position was given to Jason Batchelor, Caucasian, who had less

seniority than Rich, and who also had been previously suspended for a week due to speeding in the truck.

46. On or about **January 31, 2019**, Rich received a letter from Human Resources Manager, Michelle Kammerer, stating he was terminated, effective immediately.

47. Primus' stated reason for termination was that Rich was responsible for a fuel spill.

48. The fuel spill was not Rich's fault.

49. There had been several fuel spills, and no other employee was terminated.

50. Willow Glover, African American, along with Michael Constable, Caucasian were both involved in a fuel spill.

51. Only the African American employee, Mr. Glover, was disciplined for the fuel spill as he was suspended.

52. Mr. Glover had not complained of racial discrimination at the time his discipline occurred.

53. Rich, who had complained of race discrimination was terminated instead of being simply suspended.

54. Rich was terminated instead of being not disciplined at all like white employees.

## IV. CLAIMS

### COUNT I- RACE DISCRIMINATION- DISPARATE TREATMENT 42 USC 2000(e) et. seq. and 42 U.S.C. 1981

55. The defendant discriminated against the plaintiff because of his race in the terms, conditions, and privileges of employment.

56. The Plaintiff, Rich is a member of a protected class as he is an African American.

57. Rich was treated different from other similarly situated employees when he was:

    a. not provided insurance even though he was eligible for insurance,

    b. he was not provided a CAC card,

    c. he was not providing training,

    d. and he terminated for a fuel spill.

58. The stated reason for failing to provide insurance is pretext as white employees were provided insurance when they worked for 30 hours or more per week for one year.

59. The stated reason for failing to provide training and CAC cards, that Primus is not giving cards and training at the moment and that they are

working on it, is pretext as Jason Batchelor, Keith Faulk, and Christopher Watson were each given training and cards.

60. Further, seniority was supposed to be considered when providing CAC cards and training which would mean Rich should have been first to receive the CAC card and training.

61. Rich had Seniority over Jason Batchelor, Keith Faulk and Christopher Watson, all Caucasian, but they were provided their CAC cards and training.

62. The stated reason for his termination was is pretext as the spill was not Rich's fault and/or other employees did the same or similar actions and were not terminated.

63. As a result of the foregoing, Rich was caused to be injured and damaged including, but not limited to: lost wages (both front and back pay with interest); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; loss of seniority, mental anguish, emotional distress, depression, sadness, fear, anxiety, humiliation, shame, stress, worry, sleepless nights, and out of pocket expenses.

## COUNT I- RACE DISCRIMINATION- FAILURE TO PROMOTE 42 USC 2000(e) et. seq. and 42 U.S.C. 1981

64. The defendant discriminated against the plaintiff because of his race in the terms, conditions, and privileges of employment.

65. The Plaintiff, Rich is a member of a protected class as he is an African American.

66. Rich was qualified for and applied for the positions of temp – lead, Lead, and full-time positions.

67. Jason Batchelor, Keith Faulk, and Christopher Watson were each hired after Rich-i.e. had less seniority than Rich.

68. Jason Batchelor, Keith Faulk, and Christopher Watson, all Caucasian, were selected for the promotions Rich sought.

69. The stated reason for the selection was pretext as Primus did not follow procedure when determining who received CAC cards and training, when it determined Rich would not receive training and a CAC card while the white comparators would.

70. As a result of the foregoing, Rich was caused to be injured and damaged including, but not limited to: lost wages (both front and back pay with interest); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; loss of seniority, mental anguish, emotional distress, depression, sadness, fear,

anxiety, humiliation, shame, stress, worry, sleepless nights, and out of pocket expenses.

### COUNT III-RETALIATION-42 USC 2000(e) et. seq. and 42 U.S.C. 1981

71. The defendant Primus retaliated against Rich for objecting to and reporting acts of racial discrimination.

72. When the Plaintiff complained of race discrimination regarding his repeated attempts to apply and receive a lead position and to obtain insurance, Rich was terminated.

73. The stated reason for his termination was is pretext as the fuel spill was not Rich's fault and/or other similarly situated employees who had not complained of racial discrimination, including, but not limited to, Mr. Glover and Mr. Constable, did the same or similar actions and were not terminated.

74. As a result of the foregoing, Rich was caused to be injured and damaged including, but not limited to: lost wages (both front and back pay with interest); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; loss of seniority, mental anguish, emotional distress, depression, sadness, fear, anxiety, humiliation, shame, stress, worry, sleepless nights, and out of pocket expenses.

## **COUNT IV- DISCRIMINATORY DISCHARGE (RACE) – 42 USC 2000(e) et. seq. and 42 U.S.C. 1981**

75.   The Plaintiff is an African American.

76.   The Defendant terminated the Plaintiff because of his race.

77.   The stated reason for his termination was pretext as the fuel spill was not Rich's fault and/or other similarly situated employees, including, but not limited to Mr. Constable did the same or similar actions and were not terminated.

78.   As a result of the foregoing, Rich was caused to be injured and damaged including, but not limited to: lost wages (both front and back pay with interest); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; loss of seniority, mental anguish, emotional distress, depression, sadness, fear, anxiety, humiliation, shame, stress, worry, sleepless nights, and out of pocket expenses.

### **IV. DAMAGES**

79. Rich was caused to be injured and damaged including, but not limited to: lost wages (both front and back pay with interest); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; loss of seniority, mental anguish,

emotional distress, depression, sadness, fear, anxiety, humiliation, shame, stress, worry, sleepless nights, and out of pocket expenses.

80. Rich is seeking an unspecified amount of compensatory and punitive damages to be determined by the jury.

## VI. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

81. Enter an Order requiring the defendant to make the plaintiff whole by awarding him reinstatement, lost wages (both back pay and future pay) plus interest, out of pocket expenses, compensatory and punitive damages, loss of benefits, loss of retirement, loss of pension, loss of seniority, and other benefits of employment.

82. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully Submitted,

*Patricia A. Gill*
Patricia A. Gill
GIL047
Attorney for Plaintiff

**OF COUNSEL:**

PATRICIA A. GILL, P.C.
PO Box 55304
Birmingham, AL 35255
Phone : (205) 930-9800
Facsimile: (205) 930-9809
E-Mail: patriciagill@yahoo.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

Primus Solutions, LLC
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

ASRC Primus Solutions, Inc.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

ASRC Federal Holding Company, LLC
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104